

**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-4-16650

*P.O. Box 7415*  *Telephone: (202) 598-0402*
*Washington, DC 20044*  *rebecca.jaffe@usdoj.gov*

**Oral Argument is on January 13, 2025 at 9:30 a.m.**

December 19, 2024

**<u>VIA CM/ECF</u>**

Mr. Mark Langer
Clerk of Court
E. Barrett Prettyman U.S. Courthouse and William B. Bryant Annex
333 Constitution Ave., NW
Washington, D.C. 20001

    Re:   *Twin Metals Minnesota LLC v. United States*, No. 23-5254

Dear Mr. Langer:

    In this litigation, Plaintiff Twin Metals challenges the Bureau of Land Management's (BLM) decision to deny Twin Metals' preference-right lease applications (PRLAs). Twin Metals argues that BLM erred by failing to ask the United States Forest Service whether it consented to the PRLAs. *E.g.,* Opening Br. 56–59, Reply 26–28. As explained in the government's brief, whether the Forest Service would have exercised its discretion to consent or not consent to the PRLAs is immaterial; the existence of such discretion meant BLM was required to deny the PRLAs when the Forest Service applied to withdraw the relevant lands from mineral leasing. U.S. Response Br. 35–47. In any event, BLM and the Forest Service have subsequently corresponded regarding the Forest Service's position on the PRLAs, and we bring this correspondence to the Court's attention. Att. 1 (letter from BLM to the Forest Service dated December 3, 2024); Att. 2 (letter from the Forest Service to BLM dated December 18, 2024).

                                        Respectfully submitted,

                                        <u>s/ Rebecca Jaffe</u>
                                        Rebecca Jaffe
                                        Attorney for Federal Appellees

- 2 -

cc (via CM/ECF):  All counsel of record

cc (via CM/ECF):  All counsel of record

## CERTIFICATE OF SERVICE

    I hereby certify that on December 19, 2024, I electronically filed the foregoing letter with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

                                      s/ *Rebecca Jaffe*
                                      REBECCA JAFFE

                                      Counsel for Respondent

**CERTIFICATE OF COMPLIANCE**

  I hereby certify:

  1. This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 28(j) because, excluding the parts of the document exempted by Rule 32(f), this document contains 161 words.

  2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

            <u>*s/ Rebecca Jaffe*   </u>
            REBECCA JAFFE

            Counsel for Federal Appellees

# Attachment 1




United States Department of the Interior
BUREAU OF LAND MANAGEMENT
National Headquarters
Washington, DC 20240
https://www.blm.gov

December 3, 2024

Tony Dixon
Regional Forester
US Forest Service, Eastern Region
626 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

Dear Mr. Dixon:

As you know, the Bureau of Land Management (BLM) is currently a defendant in the *Twin Metals v. United States* lawsuit (D.C. Circuit No. 23-5254), involving a challenge to the BLM's October 21, 2021, decision rejecting Twin Metals Minnesota's (Twin Metals) preference right lease applications (PRLAs) MNES-57965 and MNES-50264 for hardrock mineral leases on lands within the Superior National Forest (SNF) (Decision enclosed). In the decision rejecting the PRLAs, the BLM references the Forest Service's September 2021 application to withdraw certain lands in the SNF—including those included in the PRLAs—from the operation of the mineral and geothermal leasing laws, and the withdrawal application's purpose to protect and preserve the Rainy River Watershed, the Boundary Waters Canoe Area Wilderness, and the Boundary Waters Canoe Area Wilderness Mining Protection Area in northeastern Minnesota from the potential adverse effects of mineral exploration and development. The decision also cites to the segregation of those lands from the operation of the mineral and geothermal leasing laws upon BLM's publication of notice of the withdrawal application in the Federal Register on October 21, 2021, as well as to the BLM's regulations at 43 C.F.R. § 2310.2(d), which provide that "applications for use of the lands involved in a withdrawal application . . . the allowance of which is discretionary, shall be denied." The decision concludes that the PRLAs are applications, the allowance of which is within the BLM's discretion, and that the applications are therefore rejected.

As you are aware, in the lawsuit, Twin Metals argues that BLM lacked authority to reject the PRLAs and that a specific Forest Service non-consent determination was required for proper rejection of the PRLAs. Twin Metals' lawsuit seeks a declaratory judgment that the PRLAs are still pending because the Forest Service did not issue such a determination. The BLM maintains that its discretionary authority was a sufficient basis for its decision to reject the PRLAs and will defend its decision on that basis. But, in case the court declares that the applications remain pending because the Forest Service did not then issue a determination, for the avoidance of doubt, to address any uncertainty, and to clarify the matter for the court, the BLM requests that the Forest Service provide its position as to whether it consents to the BLM issuing new hardrock mineral leases to Twin Metals Minnesota under its PRLAs.

Thank you in advance.

Sincerely,

Nada Wolff Culver
Principal Deputy Director

Enclosure

# Attachment 2



**United States Department of Agriculture** | **Forest Service** | Eastern Region Regional Office | 626 East Wisconsin Avenue Suite 800 Milwaukee WI 53202 414-297-3600

**File Code:** 2820
**Date:** December 18, 2024

Nada Wolff Culver
Bureau of Land Management Principal Deputy Director
United States Department of the Interior
BUREAU OF LAND MANAGEMENT
National Headquarters
Washington, DC 20240

Dear Principal Deputy Director Culver:

In a letter dated December 3, 2024, the Bureau of Land Management (BLM) requested that the Forest Service (FS) provide a response as to whether it consents to preference right lease applications (PRLAs) MNES-057965 and MNES-050264 submitted by Twin Metals Minnesota, LLC (TMM) for lands within the Superior National Forest (SNF) "in case the court declares that the applications remain pending because the Forest Service did not then issue a determination." These PRLAs were rejected by the BLM on October 21, 2021, after the Forest Service applied in September 2021 to withdraw more than 225,000 acres of land within the SNF from mineral leasing. The lands that were the subject of the rejected PRLAs were located within the area of the Rainy River Watershed included in the withdrawal application, approximately nine miles southeast of Ely, Minnesota and two miles from the Boundary Waters Canoe Area Wilderness (BWCAW). Any leases issued in response to the PRLAs would have been for the purpose of authorizing exploration and development of copper-nickel and platinum group metals, as well as other associated minerals, on the subject lands. To avoid doubt, address uncertainty, and clarify if necessary for the court, the Forest Service has reviewed the documentation of potential environmental consequences of mineral development within the PRLAs and surrounding lands (including BWCAW lands), the socio-economic benefits and costs of mineral development, tribal and public opinion, and current laws and policies in response to your request.

The record for the 2016 lease consent determination and 2023 withdrawal application demonstrate that development of these mineral resources presented an unacceptable, inherent risk of serious and irreparable harm to the BWCAW natural resources. It has been thoroughly documented that the proposed mineral leasing is not a compatible use within the watershed in such proximity to the wilderness and that the Forest Service's withholding of consent to the issuance of leases for MNES-057965 and MNES-050264 would be consistent with the record.[1] This is entirely consistent with previous consent decisions on mineral lease renewals in the same area of the Rainy River Watershed, as well as last year's decision

---

[1] These rejected PRLAs included lands administered by the Forest Service with reserved public domain status. Under the Act of June 30, 1950, codified at 16 U.S.C. § 508b, the BLM has authority delegated from the Secretary of the Interior "to permit the prospecting for and the development and utilization" of hardrock mineral resources. However, the statute provides that the "development and utilization of such mineral deposits [associated with National Forest System lands] shall not be permitted by the [BLM] except with the consent of the Secretary of Agriculture." The Secretary of Agriculture's consent authority has been delegated to the Forest Service. The Forest Service also retains consent authority with respect to federal mineral leasing on NFS lands with "acquired" status, although these rejected PRLAs did not include any such lands.




Caring for the Land and Serving People    Printed on Recycled Paper

to withdraw approximately 225,378 acres of land within the watershed from mineral leasing. Extensive analysis and public input associated with prior consent decisions and the mineral withdrawal process informs and supports this response.

When evaluating consent to the issuance of a lease, the Forest Service considers the unique ecological and cultural attributes of National Forest System (NFS) lands that might be adversely affected by mineral development, along with the social and economic consequences that could stem from a decision to consent or a decision to withhold consent. As indicated above, extensive analysis resulted in the decision to deny consent for the two mineral lease renewals in 2016 (MNES-01352 and MNES-01353) and the mineral withdrawal in 2023.

Documented potential adverse environmental impacts associated with hardrock mineral development remain a significant concern. Mineral leasing could cause changes to terrestrial or aquatic habitat function due to surface destruction, noise/light/air pollution, and modification of streams, lakes, or wetlands. Loss of terrestrial habitat and modification or loss of wetlands could adversely affect public use and enjoyment of those lands and reduce access to treaty resources for Tribes. Changes to water quality could potentially result in adverse changes to the biological integrity of aquatic communities and to sensitive species. This in turn could adversely affect the wilderness character of the BWCAW, public use and enjoyment of water and aquatic resources, and the ability of Tribes to exercise treaty rights.

The record for the 2016 lease consent determination and 2023 withdrawal application determined hardrock mining would likely produce waste rock that would require management for centuries or in perpetuity. The long-term performance of many engineered waste storage systems has not been tested, especially under unpredictable events such as extreme weather, which might increase with climate change. If a failure of waste storage systems did occur, remediation technologies could have limited effectiveness and might not return environmental resources back to pre-mining conditions within the watershed. Hardrock mines in sulfide mineralization are known worldwide for producing acid mine drainage (AMD) and metal leaching that require continuous management and perpetual water treatment. Acid drainage is one of the most significant potential environmental impacts at hardrock mining sites.

The Forest Service has a responsibility to administer the BWCAW for present and future generations. The BWCAW is a unique, fragile ecosystem and an irreplaceable American treasure. With the Wilderness Act of 1964 and the Boundary Waters Canoe Area Wilderness Act of 1978, Congress provided direction to protect and enhance wilderness resources and character, all while minimizing the environmental impacts associated with mineral development. To address the concerns associated with mining impacts to the wilderness area, the 1978 Act prohibits authorization of federal mineral development within the BWCAW, as well as an area adjacent to the wilderness designated as the Mining Protection Area (MPA). Previous Forest Service decisions to deny consent and pursue the 2023 mineral withdrawal, as well as our view of environmental risks today, are in alignment with the direction provided by the 1964 and 1978 Acts addressing potential significant adverse effects from mineral development.

In addition, the fact that the BWCAW region has been home to Native Americans for millennia is well documented. The Minnesota Chippewa retain hunting, fishing, and other usufructuary rights throughout the entire northeast portion of the State, including under the 1854 Treaty of LaPointe. Natural resources are culturally significant for the Tribes and provide subsistence for Tribal members. Within the Ceded Territory, the Tribes have a legal interest in the natural resources and the Forest Service shares in the federal trust responsibility to protect and maintain them in accordance with applicable treaties and law.

These factors, as well as social and economic factors, were analyzed and considered in the 2016 consent decision and the 2023 withdrawal process and inform this response to your request concerning consent for the PRLAs. Mineral development can infuse local economies with capital and resources from direct and

indirect employment, but the mining industry is volatile and fluctuates due to changes in market conditions for commodities.  Regional tourism is rooted in recreational opportunities such as the BWCAW and generates direct revenue to local economies, as well as tax revenue for local, state, and federal governments.  The economic returns from recreational use depend upon sustaining the BWCAW's natural resource quality and character.  Thus, there are social and economic tradeoffs associated with mineral development that support the withholding of consent.

The Forest Service recognizes the important economic and national security benefits provided by mineral extraction and supports mining as a legitimate activity on NFS lands.  However, mining is not appropriate everywhere on NFS lands.  While this area of Minnesota has potential to produce significant quantities of mineral commodities, including critical minerals, the potential for production of these resources has not been shown to outweigh the potential risk of significant and irreparable adverse effects associated with exposure of this sensitive watershed to sulfide mineralization.

In the 2023 mineral withdrawal application, the Forest Service concluded that potential risks from development of base and precious metals within the watershed would be unacceptable after considering the impacts to, and tradeoffs with, cultural, economic, and natural resource values.  With the withdrawal, the United States pursued a comprehensive and strategic approach for the protection of natural resources on NFS lands located within the Rainy River Watershed, including the BWCAW, the MPA, the 1854 Ceded Territory, from known and potential adverse environmental impacts associated with the development of federal leasable minerals.  The Forest Service has a responsibility to administer the BWCAW and MPA for present and future generations.  This rationale was the basis for denying consent on the two lease renewals in 2016 and for the application to withdraw federal minerals in the Rainy River Watershed (where the referenced PRLAs are located) in 2023.  The underlying concerns and risks have not changed.  Based upon our review of the record, the withholding of consent to the issuance of leases for MNES-057965 and MNES-050264 would be consistent with the findings set forth in the 2016 lease consent decision and 2023 withdrawal application.  The record for the 2023 withdrawal summarized above clearly supported denial of consent for the PRLAs at the time of the withdrawal application.  However, because the withdrawal resulted in a decision to reject the PRLAs, the Forest Service did not send BLM a letter denying consent for the lease applications.  Our position in this matter has not changed and we continue to believe that the record before the agency supports denial of PRLA consent.

Sincerely,

**ANTOINE DIXON**
Digitally signed by ANTOINE DIXON
Date: 2024.12.18 11:28:29 -06'00'

ANTOINE L. DIXON
Regional Forester

Tom Hall, Elrand Denson, Ron Mulach, Vince Vukelich, Shawn Olson, Stephanie Carman